ORIGINAL

DeARCY HALL, J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BLOOM, M.J.

CV 18 - 4180

------------------------------------------------------------------

J.T. on behalf of T.T.,

                              Plaintiff,

                  vs.

NEW YORK CITY DEPARTMENT OF EDUCATION,

                            Defendant.

------------------------------------------------------------------x

COMPLAINT
REQUESTING A PENDENCY
ORDER PURSUANT TO
20 U.S.C. §1415

RECEIVED

JUL 2 6 2018

PRO SE OFFICE

      Parent Jerry Geza Toth, on behalf of his son T.T., as and for T.T.'s Complaint

against defendant, the New York City Department of Education alleges:

      1.  T.T. is an 11 year old child suffering from autism, resulting in significant deficits and

interfering behaviors, not limited to a handicap in speaking.

      2.  T.T. was at all relevant times, and still is, a student residing within New York City.

      3.  The New York City Department of Education is a duly constituted school district

organized under the laws of the State of New York.  It is the local education agency.

**Jurisdiction and Venue**

      4.  This Court, pursuant to 20 U.S.C. §§ 1415(i)(2) and (3), 34 C.F.R. §§300.516 and

300.517, 28 U.S.C. §§1331 and 1367, has jurisdiction of this action without regard to the amount

in controversy.  Venue is proper.  The plaintiffs and defendant either reside or conduct business

within this jurisdiction.

**Nature of the case**

      6.  By this Complaint the plaintiffs request an "automatic preliminary injunction"

pursuant to 20 U.S.C. §1415(j).  Zvi D. by Shirley D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982).

See also N.Y. Educ. Law §§ 4404(4), 4410(7)(c); 34 C.F.R. § 300.518(a); 8 N.Y.C.R.R. § 200.5(m).

## Background

7.   T.T. the son of Jerry Geza Toth and Mira Toth, was born October 2, 2007.

8.   In June, 2010,  psychologist Xue J. Ma, retained by the Early Intervention Program, diagnosed T.T. as autistic.  Dr. Ma recommended ABA therapy.  (Pursuant to Dr. Ma's recommendation Terence received 20 hours per week of therapy, from June, 2010 to August, 2011.

9.   Dr. Karen Hopkins, M.D. is an Associate Professor of Pediatrics and a Developmental Behavioral Pediatrician in the Department of Pediatrics, Division of Developmental-Behavioral Pediatrics at the NYU School of Medicaine, NYU Langone Medical Center. Dr. Hopkins, M.D. and clinical psychologist, Dr. J. Keluskar, Ph.D., observed that the student, without sufficient 1:1 interaction, regressed.  Dr. Hopkins prescribed at least 20 hours per week of home based 1:1 ABA instruction.

10.  Julie Russell, the Education Director of a private school explained T.T.'s handicap in layman's terms:

> "…in a classroom of five other students he's probably going to be very distractible.  I think it's going to be very hard for him to follow classroom routines, any direction given by a teacher to the whole classroom.  I think it's going to be hard for him to attend.  I think any maladaptive behaviors that might appear, it could be hard to manage those behaviors with five other students present in the room,"

Ms. Russell identified a key issue:  the student lacks skills to learn in a classroom environment without close 1:1 supervision and interaction.

6.   T.T.'s LRE (Least Restrictive Environment) is the study of a regular education study materials with 1:1 instruction.  Placement in a specialized private school, home based 1:1 instruction, speech therapy and a highly structured regular education curriculum are "reasonably calculated" and necessary for T.T. to progress. See Bd. of Educ. v. Rowley, 458 U.S. 176 (1982); C.L. v. N.Y.C. Dept. of Educ., No. 12-Civ.1676 (JSR), 2013 U.S. dist. LEXIS 3474.

2

## The IDEA puts legal obligations upon a school district.

7.  The IDEA, Individuals with Disabilities Education Act, 20 U. S. C. § 1400 *et seq.*

identified a public interest to promote the education of handicapped children. *Board of Educ. v.*

*Rowley,* 458 U.S. 176, 179, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (interpreting the Education

for All Handicapped Children Act, subsequently amended and renamed IDEA).

8.  "The IDEA aims "to ensure that all children with disabilities have available to them a

free appropriate public education that emphasizes special education and related services designed

to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). The IDEA requires school districts to

make an evaluation"sufficiently comprehensive to identify all the child's special education and

related services needs." 34 C.F.R. 300.304[c][6];8 NYCRR 200.4[b][6][ix].

9.  At the beginning of every school year the IDEA requires a school district to issue to a

disabled or handicapped student an Individual Educational Program ("IEP"). 20 U.S.C.

§1414[d]|2];  34 CFR 300.342[a]; 8 NYCRR 200.4[d].

10. The IDEA requires a CSE (Committee on Special Education) to consider, to address

and to rule upon any after school related services necessary to provide a FAPE. As part of an

evaluation the IEP team, was required to review existing evaluation data on the child including

"evaluations and information provided by the parents of the child" 20 U.S.C. §1414[c][1][A][i];  34

C.F.R.§300.305[a][1][i]; see 8 NYCRR 200.4[b][5][i].

11. The IDEA requires a school district to involve parents in the design of an IEP.

Committees "shall ensure that the parents of each child with a disability are members of any group

that makes decisions on the educational placement of their child." 29 U.S.C. 1414(e);  see also 34

C.F.R. §(e)(1).

12. The IDEA requires an IEP to be a "*comprehensive* statement of the educational needs of

a handicapped child and the specially designed instruction *and related services* to be employed,

meet those needs." *Burlington*, 471 U.S. at 368.   IEP's must include "a comprehensive statement of

the educational needs of [the] handicapped child and the specially designed instruction and related

services to meet those needs." *Frank G. v. Bd. of Educ*, 459 F3d 356, 363 (2d Cir. 2006).

6.   The IDEA requires a school District to provide to disabled and handicapped students.

a free and appropriate public education ("FAPE") 20 U.S.C. § 1412(a)(12); 9 N.Y.C.R.R. § 7070.3,

an IEP suitable to the child's special needs.   209 U.S.C. §§1400(d)(1);  1412(a)(4), 1414(d).

> "The IDEA charges school districts with a responsibility to identify and to
> evaluate disabled children, 20 U.S.C. §§1414(a)-(c), develop an IEP for
> each one §1414(d)(2), and review every IEP at least once a year
> §1414(d)(2)."

Schaffer v. Weast, 546 U.S.49, at 53, 126 S. Ct. 528, 163 L.Ed.387, at 394.

### The Department systematically violated the IDEA.

7.   T.T. has attended schools of the school district since September, 2012, for eight years.

8.   On September 6, 2012, December 13, 2013, January 16, 2014, and August 24, 2016,

the Department offered T.T. grossly inappropriate, substantively inadequate IEP's.

> "[T]he Department failed to consider a 1:1 ratio placement classroom,
> despite overwhelming evidence that [T.T.] required one, and instead placed
> [T.T.] in a 6:1:1 classroom.  The failure to consider a 1:1 classroom
> resulted in the denial of a free appropriate public education."

*E.g.*, *CF ex rel. RF v. New York City Dept. of Educ.*, 746 F. 3d 68 (2nd Cir. 2014).

9.   The Department presented no documentary evidence of an evaluation of the

student's individual needs prior to the issuance of IEP's omitting services the student needed.

The school district provided no evidence that anyone on the CSE considered expert evaluations

in designing any IEP.   For a school district, without conducting evaluations, and without

discussions with parents, year after year to provide inappropriate IEP's violates the IDEA.

10. The parents filed administrative cases challenging the IEPs issued or implemented on September 6, 2012, December 28, 2012, December 10, 2013, December 16, 2014,  July 6, 2015, August 24, 2016.  The Department stipulated to supply 1:1 instruction the IEP's had omitted.

11. Each year, by providing IEP's omitting the 1:1 instruction T.T. needed, and later stipulating, the Department aimed to deprive the student of a legal right of pendency.

### The student's three academic years began
### without the Department providing any IEP at all.

12.  On or about April 24, 2016, June 30, 2017 and June 30, 2018 the student's IEP's and stipulations for the preceding years expired. The Department issued no IEP for the following year. The parents' complaints alleged that the Department not only failed to provide a FAPE, but that the Department issued no IEP at all.

13.  As in the previous cases of inappropriate IEP's, in the cases of no IEP's, the Department eventually signed stipulations with the parents.  By this procedure, contrary to law, the Department aimed to deprive T.T. of his right, under the IDEA, to receive an appropriate IEP.

14. While providing no IEP's, the school district also failed to discuss the student's education with the parents or to involve the parents in the student's education.  The omission by the Department to discuss class placement with the parents impeded the child's right to a free appropriate public education, and significantly impeded the parents' opportunity to participate in the decision making process, and caused a deprivation of educational benefits.

15. Without notice to parents and without discussion with the parents, the school move T.T. from classroom to classroom. A classroom teacher wrote to the parents that the teacher did not know why T.T. had been transferred into her classroom.

16. On August 24, 2016, the Department mailed to parents a retroactive IEP.  The

"retroactive IEP," closely resembled the 2013 IEP. Neither the 2013 IEP nor the 2016 IEP
provided at-home ABA therapy. The parents rejected the "retroactive IEP" on two grounds.
Firstly, "the Department failed to meet its obligation to have an approved IEP in place by the
beginning of the school year (see 34 CFR 300.342[a]; 8 NYCRR 200.4[d])." PA-108, line 6.
Secondly, the parents objected that "The purported IEP omits to list five of the ten persons who
participated in a June 16, 2016 IEP meeting." An administrators created an IEP not reflecting the
views of the persons who attended the IEP meeting. PA-108.

17. 16. T.T. suffers difficulty speaking. From July 2015 to July 2018, the Department
placed him in a classroom with classmates who could not speak. T.T.'s doctor and parents
requested transfer to a classroom with children who speak. The school failed to comply.

18. In July, 2018 the parents requested a brief description of T.T.'s classroom.
The school retained a lawyer to oppose the request of parents for basic information.

### The Department's violations of the IDEA are systemic.

19. "Even minor violations may cumulatively result in a denial of a FAPE." R.E. v.
New York City Dept. of Educ., 694 F. 3d 167, 191 (Court of Appeals, 2nd Circuit 2012).
The Department followed a policy of violating the IDEA's requirement that the Department
conduct evaluations of students and provide appropriate IEP's.

20. The Department signed seven stipulations to provide services its IEP's omitted.

| Date IEP Implemented | Date IHO complaint filed: | IHO Case # | Resolution Date: |
|---|---|---|---|
| Sept. 6, 2012 | Sept. 6, 2012 | 140456 | Nov. 15, 2012 |
| Dec. 28, 2012 | Jan. 13, 2013 | 143300 | April 5, 2013 |
| Dec. 28, 2012 | June 28, 2013 | 145094 | March 23, 2018 |
| Dec. 10, 2013 | March 8, 2014 | 150088 | Apr. 24, 2014 |
| Dec. 16, 2014 | Jan. 23, 2015 | 154666 | March 4, 2015 |
| July 6, 2015 | April 8, 2016 | 160187 | Jan. 30, 2017 |
| August 24, 2016 | July 7, 2016 | 161534 | Jan. 30, 2017 |

"The futility exception is particularly relevant in actions, such as the one at hand, that allege systemic violations of the procedural rights accorded by IDEA." Buffalo City Sch. Dist., 2013 U.S. Dist. LEXIS 93924, 2013 WL 3354424 at *8.  In Toth v. New York City Department of Education, 14-cv. 3776, a case concerning T.T.'s IEP for 2013, Magistrate James Orenstein, in his Report and Recommendations, noted:

> "Of course, if the DOE were to issue such a regressive IEP,
> Toth would have the right to initiate a new lawsuit."

21. The omission to provide any IEP at all is an extremely serious procedural error.

22. New York places upon the school district the burden of proof that the IEP was appropriate. N.Y.S. Educ. Law §4404(1)(c). See B.R., 2012 U.S. Dist. LEXIS 182305.

23. The Department cannot possibly prove that an omission to provide any IEP at all was appropriate.  By providing no IEP whatsoever for the last two consecutive academic years, the Department forfeited a defense that parents must exhaust administrative remedies.

23.  Where a school district "completely fails to implement the procedures set forth in the IDEA, systemic violations that cannot be cured by administrative procedures are present." *Scaggs v. New York State Dep't of Educ.*, No. 06-CV-0799, 2007 WL 1456221, at *6 (E.D.N.Y. May 16, 2007).  "[T]he problems alleged are `systemic violations' that cannot be addressed by the available administrative procedures." *Kalliope R.*, 827 F.Supp.2d at 138 (quoting *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 113 (2d Cir.2004)). The Department's systemic failure to provide IEP's prejudices T.T.  "[A]dequate remedies are not reasonably available." *Intravaia v. Rocky Point Union Free Sch. Dist.*, 919 F.Supp.2d 285, 292 (E.D.N.Y.2013).  The IDEA's exhaustion requirement will be excused "in situations in which exhaustion would be futile." *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir.2007).

"The administrative process is "inadequate" to remedy violations of
§ 1415(j) because, given the time-sensitive nature of the IDEA's stay-put
provision, "an immediate appeal is necessary to give realistic protection to
the claimed right." ... Section 1415(j) establishes a student's right to a stable
learning environment during what may be a lengthy administrative and
judicial review. ... If the child is ejected from his or her current educational
placement while the administrative process sorts out where the proper
interim placement should be, then the deprivation is complete. A belated
administrative decision upholding a student's stay-put rights provides no
remedy for the disruption already suffered by the student. Hence, as a
practical matter, access to immediate interim relief is essential for the
vindication of this particular IDEA right...*see also* <u>Digre v. Roseville Schs.
Ind. Dist. No. 623, 841 F.2d 245 (8th Cir. 1988)</u> (holding that federal courts
have the authority to enter injunctions regarding the placement of a child
during the pendency of state administrative proceedings)."

<u>Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.</u>, <u>297 F.3d 195 at 199</u> (2d. Cir. 2002) Sotomayer, J.

### Relief Sought

25. WHEREFORE the parents respectfully request a pendency order pursuant to 20

U.S.C. §1415(j), and such other, further and different relief as may be just under the

circumstances.

Dated:  July 26, 2018
        Flushing, N.Y.

s/s *Jerry Geza Toth*  (signed electronically)
_____
              Jerry Geza Toth, Parent

8

NEW YORK CITY DEPARTMENT OF EDUCATION

------------------------------------------------------------------X

In the Matter of

Henry Terence Toth

STIPULATION OF SETTLEMENT

OSIS No:224-465-203
IHO CASE NUMBER: 166490
DOB: 10/2/2007

------------------------------------------------------------------X

WHEREAS, Henry Terence Toth ("Student") is a "Student with a disability" within the meaning of Article 89 of the New York State Education Law, and for the 2017-2018 School Year, which includes the period from July 1, 2017 to June 30, 2018 ("School Year").

WHEREAS, J. Geza Toth ("Parent"), Parent of Student is seeking to obtain Special Education Teacher Support Services ("SETTS") and reimbursement for study materials and curriculum ("Curriculum") and reimbursement for individual speech and language sessions ("Speech"). Curriculum is to be provided by Kumon Learning Center ("Provider 1"), located at 52 Union Street, Flushing, New York. Speech is to be provided by New York Therapy Placement Services, Inc., located at 500 Bi-County Blvd, Suite 450, Farmingdale, NY 11735 ("Provider 2"). Neither Provider 1 or Provider 2 has been approved by the New York State Education Department for the provision of special education services or programs for students with disabilities.

WHEREAS, Parent notified the New York City Department of Education ("Department") byfiling a Due Process Complaint with the New York City Impartial Hearing Office on June 16, 2017 ("DPC") alleging that the Department had failed to provide a free and appropriate public education for the student for the School Year and was seeking payment for special education services;

WHEREAS, the Parent and the Department (collectively, "the Parties") now desire to resolve the issues raised by the Parent without further proceedings and without admission of fault or liability;

WHEREAS, no person, not a party, has an interest in this action;

WHEREAS, the parties have held discussions, have had the opportunity to review and discuss all of the terms and conditions of the Stipulation of Settlement and now freely consent to enter into this Stipulation, such consent not having been induced by fraud or duress or any other influence; and

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the Parties as follows:

1. Wherever stated, the term "Department" shall also include the Department's agents, officers, employees and consultants. Wherever stated, the term "School" shall also include the School's directors, agents, employees and consultants. Wherever stated, the term "CSE" shall mean the Department's Committee on Special Education. Wherever stated,

the term "Provider" shall also include the Provider's agents, officers, employees and consultants.

2.    In consideration of the Parent's agreements below, the Department agrees: (1) to issue reimbursement to the Parent for Curriculum services rendered to the Student by Provider 1 during the School Year in a total amount of **THREE THOUSAND SIX HUNDRED DOLLARS ($3,600.00)**; (2) reimbursement to the Parent for Speech services rendered to the Student by Provider 2 during the School Year in a total amount of **SIX THOUSAND SIX HUNDRED DOLLARS ($6,600.00)** for 40 hours of Speech; and (3) to issue a P-4 for the provision of twenty (20) hours per week of home-based SETSS <u>for the School Year</u>, at a rate not to exceed $120/hr. for the School Year, including any amounts paid under pendency, subject to the following terms and conditions:

    (a)    Payment under this stipulation will be contingent upon receipt of records indicating the receipt of Curriculum and Speech services by the Student, proof of costs and payment for the Curriculum and Speech services. Any payment must be for Curriculum and Speech services actually delivered to the Student and costs paid by the Parent in connection with the Curriculum and Speech services. In addition if the Student does not utilize all the Curriculum, SETSS or Speech services on or before June 30, 2018, the right to any remaining Speech or SETSS services, provided by this Stipulation for the 2017-2018 school year and provided for the 2017-2018 school year, shall be waived. The parents do not waive any claims for the same or similar services in subsequent years.

    (b)    The Parent has submitted to the Office of Legal Services an affidavit from Provider 1 and Provider 2 as to the costs and nature of the Program. The Office of Legal Services agrees to provide copies of these documents to the Bureau of Non Public School Payables following the counter-signatures of this stipulation of settlement.

    (c)    The Parent shall ensure that any additional documentation of the Student's receipt of Curriculum and Speech services and payments are submitted to the Bureau of Non Public School Payables. Documentation may be submitted on a monthly basis. Documentation under this subparagraph may be submitted by one of the following methods:

- Preferred method is by email to:
  NPSPSettlements@schools.nyc.gov
  Please include the Student's name and OSIS in the subject line.

- By U.S. Mail to:
  NYC Department of Education
  Bureau of Non Public School Payables
  Attn: Settlements Unit
  65 Court Street, Room 1001, Brooklyn, NY 11201
  Phone: (718) 935-4789

or

2

- By facsimile to: (718) 472-6101
  Attn: Settlements Unit of Bureau of Non Public School Payables.

(d)    The Department shall review documentation submitted pursuant to (a) and (c) above, approve and process payment under this stipulation within 30 calendar days of receipt of all required and complete documentation. The amounts paid by the Department under this stipulation will total **TEN THOUSAND TWO HUNDRED DOLLARS ($10,200.00) for the Speech and Curriculum**, including any amounts paid under pendency, except in the instances specified in subparagraphs 2(a) and 2(e). If the Parent has not previously been paid by the Department or has had a change in name or address since prior payments, the Parent shall submit a Parent Reimbursement Form.

(e)    If the Student leaves the Curriculum or Speech services for any reason before the end of the School Year, the Parent will notify the Office of Legal Services and the Bureau of Non Public School Payables, in writing. Any costs refunded by Provider 1 or Provider 2 to the Parent for the period of the School Year already paid by the Department under this stipulation, as a result of the student's early departure from the Curriculum or Speech services, shall be immediately refunded to the Department. On prior written notice to the Department, parents may substitute a different provider of speech therapy upon submission of proof of provider certification, provided that the provider's hourly rate is not greater than the rate agreed to herein.

(f)    "Process for payment," "pay," "payment" or "payments" means that, upon the Department's receipt, review, approval and entry of all information and documentation provided by the Parent, the Department will complete all administrative tasks relative to such payment, and notify the City Comptroller that such payment is due and owing to the Parent.

3.    In consideration of the Department's agreement to provide payment under this stipulation, the Parent:

(a)    agrees that this stipulation fully resolves any and all claims or requests, including, but not limited to, submissions of 10 Day Notices and DPCs, submitted to the Department regarding allegations that the Department failed to provide a free and appropriate public education for the Student for the School Year;

(b)    agrees to notify the Impartial Hearing Office, in writing, that this matter is resolved and to request a withdrawal with prejudice;

(c)    agrees to hold the Department harmless and release the Department from any and all acts and/or omissions chargeable to the Provider 1 or Provider 2, Curriculum, Speech services or SETSS services that result in any damage, loss, liability, costs and/or claims of any kind whatsoever, to the Student and/or the Parent during the School Year; and

3

(d)    waives on behalf of the Parent and/or the Student, any and all other claims for damages, costs, and/or compensation that the Parent and/or Student may have against the Department as a result of (I) the Student's receipt of Curriculum, Speech or SETSS services during the School Year, or (II) the Department's obligation to provide the Student with a free appropriate public education for the School Year, including any claims for damages, costs and/or compensation that the Student may be entitled to assert upon the attainment of the age of majority regarding the School Year.

(e)    After the stipulation is fully executed, should the School fail to provide the 90 minutes per week of mandated 1:1 speech services during the remainder of the School Year, the parent reserves the right to make a claim for commensurate 1:1 compensatory speech services.

4.    The Department's agreement to make payments under this stipulation as described in paragraph 2 above, are contingent upon the Parent and the Student's residencies in New York City within the meaning of section 3202 of the New York State Education Law for the School Year. The Department will not pay for any period, if any, during the School Year in which the Parent and/or the Student do not reside in New York City. In the event that the Parent or the Student do move outside of New York City during the time in which this agreement is in effect, the Parent agrees to immediately notify the Office of Legal Services, in writing, at 333 Seventh Avenue, 12th Floor, New York, New York 10001, of the Parent and Student's new address(es).

5.    The Parent represents that s/he has received and reviewed a copy of the Notice of Parental Rights within the last year, and was thereby notified of, and understands his/her due process rights.    The    Notice    of    Parental    Rights    is    also    available    at *http://schools.nyc.gov/NR/rdonlyres/A360CFD8-6B29-464F-9447-2EBFAA3D41FB/0/ProceduralSafeguardsParentsRightsLetterEnglish.pdf.*

6.    No provision of this Agreement shall be deemed an admission by the Department that it has, in any manner, violated the Student's or the Parent's rights, or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York, or the City of New York, or any rules, regulations, or bylaws of any department or subdivision of the City of New York or the New York City Department of Education.

7.    The Department's provision of, or reimbursement for the costs of tuition, related services, transportation, or any other materials or services, for the Student during the School Year, provided pursuant to this Stipulation, shall not be relied upon by any party to establish or support the position that the Curriculum, Speech or SETSS services constitutes either a recommendation by the Department, an agreement by the parties, that the Student receive the Curriculum, Speech or SETSS services or that any of these services constitutes an appropriate placement.

4

8.    The terms and conditions agreed to in this Stipulation shall be for the limited purpose of the settlement of the claims regarding the School Year. This Stipulation does not authorize the Curriculum, Speech or SETSS services to be the "then current educational placement" or alter the Student's rights to pendency as otherwise exists under applicable statutes, regulations or case law.

9.    No provision of this stipulation shall be deemed a policy or practice, in full or in part, of the Department or the City of New York.

10.   The Parent agrees to waive any claim for attorney's fees relative to this matter that might otherwise be available under applicable laws and regulations, except that the Parent does not waive any claim for fees that may be incurred in connection with any subsequent proceeding involving claims regarding the Department's implementation of this stipulation.

11.   The Parent represents that the Parent has reviewed this Stipulationand understands and agrees with all of the terms and conditions specifically contained herein.

12.   This stipulation is confidential and shall not be admissible in, nor is it related to any other litigation, proceeding, or settlement negotiation, except in a subsequent action, brought by either party, to enforce the terms of this stipulation. Notwithstanding the foregoing, the Parent or Department may reveal this stipulation to: (a) attorneys, accountants, and/or tax advisors, (b) members of their immediate family, and/or (c) the student's school or other special education providers. In the event that information concerning the existence of this stipulation is revealed, the Parent and/or Department, as the case may be, shall use their best efforts to direct all persons obtaining the information to keep it confidential.

[Continued on next page]

5

13. Nothing contained in this Stipulation of Settlement shall be deemed to waive the claims currently asserted in Jerry Geza Toth on behalf of T.T. v. City of New York Department of Education (2nd Cir., index #17-383) and EDNY index# 14-cv-3776. This stipulation contains all of the terms and conditions agreed to by the parties. No oral agreement entered into at any time, nor any written agreement entered into prior to the execution of this stipulation regarding the subject matter of the stipulation, shall be deemed to exist, or to bind the parties hereto or vary the terms and conditions contained herein.

2|9|18

Dated:    New York, New York ~~January 22, 2018~~

HOWARD FRIEDMAN                                   HENRY TERENCE TOTH
General Counsel
New York City Department of Education
Attorney for Department


By: ___mmq|yr_____          By _____

   Mariam Mahmood Qureshi                    Jerry Geza Toth
   Director                                 *Attorney for Terence Toth*
   Special Education Unit                    43-32 Kissena Blvd. 15B1
   Office of the General Counsel             Flushing, NY 11355
   New York City Department of Education
   333 Seventh Avenue, 8th Floor   12
   New York, NY 10001

**ELLA PACK**
**CASE COORDINATOR**    #173630

**LAW OFFICE OF J. G. TOTH**
    Telephone (917) 576 9318            43-32 Kissena Blvd. 15B, Flushing, N.Y. 11355

                                        June 11, 2017

Impartial Hearing Office               NYS Education Dept. Office of
131 Livingston Street, Room 201        Vocational and Educational Services
Brooklyn, New York 11201               for Individuals with Disabilities (VESID)
Fax (718) 935 2528                     One Commerce Plaza R, 1624, Albany, N.Y. 12234

Dear Sir or Madam:

Re:   <u>Henry Terence Toth ("Terence") NYC ID:  224465203</u>

        By this letter, the undersigned attorney representing Terence Toth requests an impartial
hearing concerning the failure to provide Terence an IEP for the year from July 1, 2018 to June
30, 2019.  The student resides at 43-32 Kissena Blvd. 15B, Flushing, N.Y. 11355.  He attends
school at AMAC, the Association for Metroarea Autistic Children, Inc., at 25 West 17th Street,
New York, N.Y. 10011.

        Terence's most recent IEP, issued on August 24, 2016, provided for Terence to attend
AMAC with  a  6 : 1 + 3 class, 90 minutes of individual occupational therapy per week, 90
minutes of individual speech therapy/week, and 30 minutes of group speech therapy per week.

        For the academic year July 1, 2017 to June 30, 2018, the Department on Feb. 9, 2018,
stipulated to provide continued tuition for Terence to attend AMAC 12 months per year, with 20
hours per week of Special Education Teacher Support Services ("SETTS"), reimbursement of
$6600 for 40 hours of speech therapy, and of $3600 for services from the Kumon Learning Center.

        I respectfully invoke Terence's statutory pendency rights, including 20 U.S.C. §1415(e)(3).

                              **RELEVANT FACTS:**

        In June 2010, Dr. Jack Ma, an Early Intervention Program psychologist, diagnosed
Terence as autistic.  From June 2010 to August 2011, the Early Intervention Program provided 20
hours/week of home based 1:1 ABA instruction.  Professionals who evaluated Terence have
included a pediatrician, Dr. Karen M. Hopkins, M.D., two psychologists, Dr. S. Kern, Dr. J.
Keluskar, and persons experienced in ABA therapy, Ms. Despina Pieri, M.A., and Ms. Danielle
Silverstein, M.A. All recommended 1:1 instruction, necessary for Terence to learn and progress.

  **I.    The Department failed to provide an IEP.**
        In failing to provide an IEP for the academic year from July 1, 2018 to June 30, 2019, the
Department in effect scheduled termination by June 30 2018 of 1:1 instruction Terence has
received continuously since 2010.  The Department held no hearing, considered no input from any
expert.  The Department acted unilaterally, without consent of the parents and without pedagogic
justification.  New York Therapy, the provider of Terence's SETTSS services, notified the parents,
that in order to avoid a termination of services, the parents must file a complaint in mid June, 2018.

  **II.      To learn to speak, Terence needs compensatory therapy.**
        Terence presents an exceptionally urgent, pressing case.  If a child does not learn to speak
by a certain age, he may never learn to speak.  At age 11, Terence is failing to achieve key goals in

                                        1

speech. He lacks in his classroom examples for imitation of classmates who speak. Dr. Karen Hopkins, M.D., a developmental pediatrician, recommended transfer of Terence to a classroom with children who speak. Parental observation of the classroom confirmed that Terence's classmates are severely impaired and unsuitable as models for speech. In August 2016, the parent requested transfer of Terence to a class with children who speak.

At an IEP meeting on June 5, 2018, a recently employed speech therapist explained that over six months she had taken Terence four times, for group speech sessions, to a classroom with children who speak. On the second visit, to accustom him to speakers, he stayed only for 10 minutes. Unsurprisingly, AMAC has not reached its goal to make Terence maintain a conversation without a prompt. He has not exhibited progress in his ability independently to reciprocate a greeting, formulate a sentence when given picture cues, or answer "wh" questions with picture cues during structured tasks, and to participate during therapy sessions with a peer.

AMAC filed for bankruptcy. AMAC has not succeeded to retain talented teachers or to employ certified teachers. In December, 2017 an excellent teacher departed. A replacement teacher performed unsatisfactorily. In violation of the IEP and the Department of Education's rules, Terence's classroom has lacked a certified teacher specially trained in ABA instruction and holding a master's degree. In the first four months of 2018, Terence's classroom employed four successive teachers. This unstable environment disrupted and interfered with Terence's learning. On June 5, 2018 AMAC delivered to parents a speech therapist's report dated December, 2017.

**III.** Among autistic students Terence is unusual for his ability to study regular education materials. His Least Restrictive Environment is regular education with 1:1 instruction. Without challenging regular education study materials to engage him, the Department and AMAC could not provide a FAPE. To provide Terence a plan of regular education study and daily exercises, parents enrolled him at Kumon. In 49 countries, Kumon teaches more than 1,000,000 students.

## DISCUSSION

**I.** "Each school year, each public agency must have in effect, for each child with a disability within its jurisdiction an IEP..." 34 C.F.R. §300.323(a); 8 NYCRR 200.1[e][1][ii]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186 (Court of Appeals, 2nd Cir. 2005); Application of the Bd. Of Educ. Appeal No. 10-006; Application of a Student with a Disability, Appeal No. 09-111. A school district must provide "an IEP that is 'likely to produce progress, not regression,' and ... affords the student with an opportunity greater than mere 'trivial advancement,'" (Cerra, 427 F.3d at 195. A statute, 34 C.F.R. §300. 347(b), required the school district to participate in the formulation of the student's IEP.

**II.** Compensatory education is an equitable remedy tailored to meet the unique circumstances of each case. Wenger v. Canastota, 979 F. Supp. 147 [N.D.N.Y. 1997]. AMAC's lack of a certified teacher, lack of group speech sessions, and a revolving door for classroom teachers entitle Terence to compensatory services appropriate to make him whole.

**III.** A school district may be required to reimburse parents for their expenditures for private educational services obtained for a student by his or her parents, if the services selected by the parent were appropriate, and equitable considerations support the parents' claim. Florence County Sch. Dist. V. Carter, 510 U.S. 7 [1993]; Sch. Comm. of Burlington v. Dept. of Educ., 471 U.S. 359, 369-370 [1985]. In Jerry Geza Toth on behalf of T.T. v. City of New York Department of Education, No. 17-383-cv (2nd Cir. 2018), the Second Circuit Court of Appeals

2

denied the Department's claim of mootness and upheld the parents claim for compensatory education.

## ARGUMENT

I.    The failure to hold an IEP meeting prejudiced the parents. AMAC excluded parents from decision making. The failure to provide an IEP excluded parents from participation in the creation or formulation of an appropriate education. Werner v. Clarkstown Cent. Sch. Dist., 363 F. Supp. 2d 656, 659 (S.D.N.Y. 2005)." The Department did not inform parents about decisions about placement. AMAC did not assign the student to an appropriate classroom. The failure to provide an IEP for the 2018-2019 academic year deprived Terence of a comprehensive statement of his individual needs, and specially designed instruction and related services to be employed. His educational program omits evaluation criteria, a procedure to review each goal, a schedule for evaluations, and responsibility to measure each goal.

A cessation of a handicapped child's schooling and the accompanying loss of educational, vocational and social development constitutes irreparable injury. *See Ross v. Disare,* 500 F.Supp. 928, 934 (S.D.N.Y. 1977) ("interruption of a child's schooling causing a hiatus not only in the student's education but also in other social and psychological developmental processes that take place during the child's schooling, raises a strong possibility of irreparable injury").

II.    For a student who lacks expressive speech, speech services are material. "It may be a rare case when compensatory education is not appropriate." Parents of Student W v. Puyallup School Dist. 3, 31 F. 3d 1489, 1497 (9th Cir. 1994). *See* P. ex rel. Mr. and Mrs. P. v. Newington Bd. of Educ., 546 F.3d 111, 123 (2d Cir. 2008) Appeal No. 08-060 [upholding additional services awards of speech language therapy]; Appeal No. 08-035 [awarding ten months of home instruction services as compensatory services].

III.    The parents' private placement at Kumon is appropriate if it provides education instruction specially designed to meet a student's unique needs (20 U.S.C. § 1401[29]; 34 C.F.R. § 300.39[a][1]; Educ. Law § 4401[1]; 8 NYCRR 200.1[ww]; Rowley, 458 U.S. at 188-89.

## REQUESTED RELIEF

I.    The parents request the Department's agreement to continue for the academic year from July 1 2018 to June 30, 2019, all services as the Department provided for the period from July 1, 2017 to June 30, 2018. The services included attendance at AMAC with an extended school year, 20 hours/week of SETTS, $6600 for speech therapy, and $3600 for Kumon Learning Services.

II.    To compensate for the lack of a certified teacher in the classroom, abnormal teacher turnover, and a dearth of appropriate peer modeling of speech in the classroom, the parents request an additional 52 hours per year of speech therapy. No prior request has been made for the requested relief concerning speech therapy.

LAW OFFICE OF J. G. TOTH

/s/ *Jerry Toth*
Jerry Toth, *Attorney for Terence Toth*

3



**Department of
Education**
Chancellor Richard A. Carranza

Howard Friedman
General Counsel

Date: June 13, 2018

Ella Pack
Impartial Hearing Office
New York City Department of Education
131 Livingston Street, Room 201
Brooklyn, New York 11201

---

RE:    STUDENT NAME:    TOTH, HENRY TERENCE
       IHO CASE NO:      173630

Dear Impartial Hearing Officer Maria Dispenza:

Please take notice that Deanna Everett Johnson will be representing the New York City
Department of Education in the above referenced matter. Please contact Deanna Everett Johnson
at DEverettjohnson@schools.nyc.gov for scheduling purposes.

Sincerely,                          *Defendant's address*
Deanna Everett Johnson
Attorney, Special Education Unit
Office of the General Counsel
New York City Department of Education
335 Adams Street, 28th Floor
Brooklyn, NY 11201
Tel.: (718) 935-5021

*Cc: Parent*

*Plaintiffs' address*

Jerry Toth
43-32 Kissena Blvd. 15B
Flushing NY 11355
917 576 9318

07/06/18

On July 26, 2018 at 9:06 AM
I emailed to Attorney Deanna
Everett Johnson, for the New York
City Department of Education an
email that I would apply to the
U.S. District Court EDNY on July
26, 2018 at 2:00 PM before a judge
or magistrate to be assigned for
a preliminary injunction or a temporary
restraining order.

She confirmed receipt by emailing
back at 9:13 AM and 9:07 AM.

Gez. Toth
Jerry Geza Toth



**NYU School of Medicine**
NYU LANGONE MEDICAL CENTER

*Karen M. Hopkins, MD*
*DEPARTMENT OF PEDIATRICS*
*DIVISION OF DEVELOPMENTAL-BEHAVIORAL PEDIATRICS*
*317 East 34th Street -- Suite 902*
*New York, New York 10016*
*Phone: 212-263-7455; Fax: 646-754-1010*

May 20, 2016

To Whom It May Concern:
     Re: Toth, Terence         Date of birth: October 2, 2007

Terence Toth is an eight-year, seven-month old boy who is a patient in the Division of Developmental Behavioral Pediatrics at NYU Langone Medical Center. Terence was most recently seen in his classroom at the Association for MetroArea Autistic Children, (AMAC) School on December 8, 2015 for a classroom observation.

Terence has a diagnosis of Autism Spectrum Disorder, (ASD), moderate, with receptive and expressive speech-language delay, and sensory integration dysfunction.

He currently attends the AMAC School in Manhattan (since September 2015). In addition to the special education services he receives in his 6:1:3 class, he receives speech-language therapy and OT services. Terence also receives 1:1 home-based ABA services, 15 hours per week.

The parents feel that his socialization has definitely improved, he seems to have developed a bit more in terms of relating to the other children. Since Terence moved to the new school the aggressive behaviors displayed last year have disappeared. He is calmer in general. In school, they feel he does not use his expressive language much, and that he expresses much more language at home and during family activities. For example, during swimming class at the YMCA, he is able to follow instructions, and uses appropriate language to request to get out of back into the pool. He waits patiently when he is allowed to get in the pool. This is in contrast to a year ago, when it was difficult to make him understand the concept of waiting his turn. The Toths also report that he is making progress in Kumon due to the repetitive and structured teaching method.

A recent report from his school noted that Terence works well with reinforcement and frequent breaks. He is proficient with basic academic concepts such as colors, knowing the letters of the alphabet, knowing numbers and counting past 10, adding and subtracting, size concepts and location concepts. He is progressing with using speech to communicate, remembering songs and rhyming words, following oral instructions and the classroom routine, speaking clearly, listening to stories from books, reading some words in books, and "easy" books, writing or copying words, and answering questions about an orally read story. He can build with blocks, and is working on pencil and paper skills, using scissors, and copying shapes. The teachers also note that Terence has difficulty sitting for long periods, focusing on tasks and following directions. They note poor concentration, restlessness, daydreaming, inattention, and talking out of turn. He is never self-destructive nor does he disturb other children but can be oppositional and easily frustrated with temper outbursts and crying. He is sometimes fearful of new experiences and sometimes appears to lack confidence.

*Behavior*

In the classroom, Terence was first observed in circle time. He was sitting in a chair quietly but was not participating. With prompting, Terence was able to complete the routine of saying hello to all of the children. With additional prompting, he was able to say that it was Tuesday. He was noted to be verbal, and to respond to simple questions, such as, "how many days are in the week, what day is today, etc." The class relies on a great deal of repetition, and the students require this in order to be active participants. Terence did not participate much during the singing, which was the next activity. However, when asked what song he wanted to sing, he said, "ABC," and clapped his hands and sang a bit. Finally, he was able to sing the entire ABC song on his own. He is able to imitate gestures of the teachers during songs. Next it was work time at the tables -- the teacher worked with him individually. His attention span was very short, and he needed to be restructured repeatedly. Terence tried to discontinue the work – broke his pencil point, looked up at the ceiling and around the room. He was also extremely distractible – any little noise made by other students was enough to distract him from the task at hand. He would get up from the table and had to be brought back. The teacher gave him pretzels as a reward and motivation for completing work. He took over 20 minutes to complete one page of work. He demonstrated that he could identify all of the letters, but did not read novel words on his own. He was able to read words that had already been covered. Terence lost interest and focus very quickly in any of the work that was presented to him. If the teacher had to attend to another child, she would have to restart the work from the beginning when she returned to Terence. He was not able to complete any work independently.

***Results of the Aberrant Behavior Checklist (ABC) – Teacher***

Terence's teachers completed the ABC. The ABC is a symptom checklist for assessing and classifying the behaviors of children and adolescents with developmental challenges -- at home, in school, residential and community-based facilities, and in developmental centers. The ABC can be completed by parents, special educators, psychologists, direct caregivers, nurses and others with knowledge of the person being assessed. Terence's scores based on his teacher's ratings follow:

| Subscale | Raw Score | T-Score | Percentile |
|---|---|---|---|
| Irritability | 17 | 59 | 83rd, not clinically significant |
| Lethargy | 18 | 64 | 92nd, mildly clinically significant |
| Stereotypy | 9 | 62 | 87th, not clinically significant |
| Hyperactivity | 34 | 65 | ***94th, clinically significant*** |
| Inappropriate Speech | 11 | >71 | **98th, clinically significant** |

*Impressions*

Terence continues to meet criteria for moderate ASD. Based on the results above, along with Terence's interval history, the impression is that Terence has made progress since attending AMAC. AMAC represents an improvement over Terence's previous school placement. From September 2012 (kindergarten) to June 2015, Terence's classroom placements did not meet his needs. Because his previous placements were unable to control Terence's behavior, (and particularly from September 2012 to December 2013), Terence regressed substantially overall. As a result of this, he was not available to learn. He fell years behind the level of regular education students of his age, suffering a large learning deficit. As a result of the current small class placement, and the availability of 1:1 speech therapy, 1:1 O.T. therapy, and some 1:1 academic instruction at AMAC, Terence is now able to learn. However, Terence still lacks the skills needed to really learn and function in a class environment, because without the tight control of his behavior that 1:1 instruction affords, Terence is unable to focus and concentrate. He has

demonstrated that he can only learn and progress with 1:1 instruction. Additionally, in his current 6:1:3 classroom, he is the most verbal child. Despite this, receptive and expressive language delays are still present, along with articulation difficulties. These interfere with his ability to communicate his needs, his knowledge, and interfere with social interaction. And as noted above, attention difficulties, distractibility and hyperactivity continue to be challenges for Terence in the classroom setting.

### Recommendations

Terence is appropriately placed at AMAC, and should remain there for the summer and upcoming academic year. He should continue to have a 12-month program.

As noted above, 1:1 instruction has been most productive for Terence. Therefore, in addition to placement at AMAC, Terence requires additional, home-based 1:1 instruction. This is how he has been able to learn and progress, with the combination of AMAC and home-based, 1:1 ABA instruction. He should have this instruction 5 days per week for 4 hours per day. This is an appropriate program for Terence: the combination of AMAC and 20 hours of 1:1 home-based instruction. The two educational modalities complement and reinforce each other.

It is recommended that Terence move gradually to a classroom of more verbal students, possibly the classroom that contains 8 students. Interaction with more verbal students than those in his current class may stimulate and improve his expressive language skills.

Terence should continue speech-language therapy to improve his abilities to verbalize thoughts and needs, to initiate conversations, and to help with overall language processing.

Terence should have OT to address hypotonia, motor planning delays, fine, motor delays, and sensory/regulatory issues.

Terence should have a follow-up with this examiner in approximately 4-6 month's time.

Please do not hesitate to contact me for any questions or comments.

Sincerely,

Karen M. Hopkins, MD
Clinical Associate Professor of Pediatrics