**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
J.T. on behalf of T.T.,

                                Plaintiff,

vs.

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                Defendant.
----------------------------------------------------------------x

RECEIVED JUL 26 2018 PRO SE OFFICE

MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE FOR A PENDENCY ORDER PURSUANT TO 20 U.S.C. §1415(j)

INDEX NO. CV 18-4180

DeARCY HALL, J
BLOOM, M.J.

Jerry Geza Toth, being duly sworn, deposes and says:

I, Jerry Geza Toth, am plaintiff in the above-entitled action and respectfully move the court, pursuant to Rule 65 of the F.R. Civ, P., for an order that the Department provide pendency to the plaintiff based upon the educational program most recently agree between the parties, embodied in a Stipulation dated February 9, 2018, until the SRO issues an order the parents can appeal to the United States District Court.

I am proceeding by order to show cause rather than by notice of motion because my handicapped son's educational program expired on June 30, 2018. There is no agreement or order in place to provide continuity in the educational services he has been receiving.

To contact my opponents and to inform them that I am seeking a temporary restraining order, I emailed a notice to an attorney representing the Department of Education concerning T.T.'s due process complaint at the administrative level.

### RELEVANT FACTS

T.T. (the "Student") has autism and requires 1:1 instruction. He and his parents reside in in Queens County under the jurisdiction of the New York City Department of Education (the "school district").

From 2012 to 2018, the Department, in every year except 2015, offered for T.T. inadequate IEP's or no IEPs. In each instance the parents filed complaints. The complaints concluded in a series of stipulations setting forth special education services, consisting of school placement and additional related services that the Department would provide and fund.

1

In June, 2016, June 2017 and June 2018, the Department provided no IEP. On July 11, 2018 the parents, seeking to avoid a disruption of T.T.'s educational program, filed a due process complaint for the academic year extending from July 1, 2018 to June 30, 2019.

Initially the Department of Education's Legal Department had approved T.T.'s case for settlement. The student is entitled to the automatic statutory injunction provided by the IDEA, 20 U.S.C. §1415(j), and Article 89 of the New York Education Law. On July 20, 2018 and on July 25, 2018, IHO Michael Levan emailed the Department's attorneys summoning them to appear and to oppose the parents' application for a pendency order to maintain the status quo. Through the hearing process it controls, the Department's agents now seek immediately to change the status quo by chopping away services T.T. has received over the past 12 months.

By this Order to Show Cause the parents seek to preserve the status quo until T.T.'s case filed July 11, 2018 proceeds through the administrative process to an eventual final order.

## DISCUSSION

### The IDEA contains a "stay put" provision while the parties litigate.

The Second Circuit has described 20 U.S.C. §1415(j) as an "automatic preliminary injunction" which "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." Zvi D. by Shirley D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982). See N.Y. Educ. Law §§ 4404(4), 4410(7)(c); 34 C.F.R. § 300.518(a); 8 N.Y.C.R.R. § 200.5(m). "The purpose of the provision is 'to maintain the educational status quo while the parties' dispute is being resolved." Doe v. East Lyme Bd. of Educ., 790 F.3d 440, 452 (2d Cir. 2015)(noting that the IDEA's pendency provision "requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete").

The IDEA imposes elaborate procedural requirements to be followed in the event of a disagreement between the parents and the local educational agency with respect to the child's IEP. 20 U.S.C. §1415. New York district courts have found the phrase "then-current placement" to mean 'the last agreed upon placement at the moment when the parents commenced the due process proceeding. Student X v. New York City Dep't of Educ., No. 07-CV-2316, 2008 U.S. Dist. LEXIS 88163, 2008 WL 4890440, at *20 (E.D.N.Y. Oct. 30, 2008) (quoting Arlington Cent. Sch. Dist. V. L.P., 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006)).

### Irreparable harm

Unless this court grants the requested pendency order, the student will suffer immediate and irreparable injury as shown by the following facts: T.T., nearly 11 years old, suffers a handicap in speaking. He has reached the time in life when he must either learn to speak or

2

remain permanently handicapped for the remainder of his life. An interruption in his education would cause him to regress academically, and lose the best chance he has to learn to speak.

"[F]inal judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by the IEP has passed, <u>Burlington Sch. Comm. v. Dep't of Educ.</u>, 471 U.S. 359, 370, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985). During that lengthy period my son needs continuity in the services he has been receiving over the past 12 months.

Winning the case in the end will not substitute for his receiving home based speech therapy and one-to-one instruction during the period the case is litigated. Interruption of a child's schooling causing a hiatus in the student's education raises a strong possibility of irreparable injury." <u>Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.</u>, 175 F. Supp. 2d 375, 392 (N.D.N.Y. 2001) (McAvoy, J.) ("It is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to actual irreparable harm."). Accordingly, this element weighs in favor of granting a preliminary injunction.

In every IEP the Defendants designed for T.T., the Department determined he was eligible for extended school year services, to continue his general and special educational services over the summer months. The Department reserves extended school year services for students, like T.T., who will "substantially regress" with breaks in instruction. Interrupting the services T.T. now receives would cause him irreparable harm.

<u>Likelihood of success on the merits</u>

It is undisputed that at the beginning of the current school year, the Department failed to provide any IEP whatsoever. The annexed evaluation by Dr. Karen M. Hopkins, a pediatrician and professor of medicine, prescribes for T.T. 20 hours per week of 1:1 instruction.

Continuously since 2010 T.T. has received home based 1:1 instruction. Just as T.T. prevailed in each previous academic year when the Department proposed to curtail his services, T.T. is likely to succeed this year. By proposing a new IEP, the school district cannot avoid 1415(j). <u>Board of Education v. Schutz</u>, 290 F.2d 476 (2d Cir. 2002).

<u>Balance of the equities</u>

The "centerpiece" of the IDEA and its principal mechanism to produce progress for disabled children is the IEP. <u>Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.</u>, 297 F.3d 195, 197 (2d Cir. 2002) (quoting <u>Honig v. Doe</u>, 484 U.S. 305, 311, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)). A school district has the obligation to provide a FAPE to students. 20 U.S.C. § 1412(a)(12); 9 N.Y.C.R.R. § 7070.3. Furthermore, at the beginning of every school year a school district has an obligation to issue an IEP. 20 U.S.C. §1414[d][2]; 34 CFR 300.342[a]; 8 NYCRR 200.4[d].

Instead of the procedure the preceding paragraph describes, the Department offered to T.T. each year either an inappropriate IEP or no IEP at all. Each year the parents have filed

3

complaints. In each instance, the parents eventually entered into a stipulation with the Department concerning what services T.T. would receive.

For T.T., appropriate IEP's have been unavailable. Instead of offering appropriate IEP's, as the IDEA requires, the Department has adopted a policy or pursued a practice of general applicability that is contrary to the law.

The Department's omission to issue IEP's to T.T. at the beginning of his last three academic years estops the Department from claiming that only an IEP can describe T.T.'s academic program. Accordingly, the balance of equities favors the grant by this Court of a pendency order based upon the most recent stipulation between the parties.

## ARGUMENT

### An exception to the exhaustion requirement applies.

The Department contends that Stipulations are not agreements providing pendency. The Department's systemic failure to provide IEP's has put T.T. in an unfair situation: T.T. lacks any recent IEP which can serve as an appropriate basis for pendency. Services he currently receives are not part of an IEP, but only a stipulation. T.T.'s lack of any IEP at all over the past two years supplies the Department a pretext to deny him pendency.

"[A]dequate remedies are not reasonably available." _Intravaia v. Rocky Point Union Free Sch. Dist._, 919 F.Supp.2d 285, 292 (E.D.N.Y.2013). Where a school district "completely fails to implement the procedures set forth in the IDEA, systemic violations that cannot be cured by administrative procedures are present." _Scaggs v. New York State Dep't of Educ._, No. 06-CV-0799, 2007 WL 1456221, at *6 (E.D.N.Y. May 16, 2007). "[T]he problems alleged are 'systemic violations' that cannot be addressed by the available administrative procedures." _Kalliope R._, 827 F.Supp.2d at 138 (quoting _J.S. v. Attica Cent. Schs._, 386 F.3d 107, 113 (2d Cir.2004)). "The futility exception is particularly relevant in actions, such as the one at hand, that allege systemic violations of the procedural rights accorded by IDEA." Buffalo City Sch. Dist., 2013 U.S. Dist. LEXIS 93924, 2013 WL 3354424 at *8.

The Second Circuit has held that the IDEA's exhaustion requirement will be excused "in situations in which exhaustion would be futile." _Coleman v. Newburgh Enlarged City Sch. Dist._, 503 F.3d 198, 205 (2d Cir.2007). "[E]xhaustion may be excused if: (1) administrative remedies were unavailable; (2) the defendants forfeited the defense or acted in such a way as to estop them from raising it; or (3) 'special circumstances' justify non-exhaustion." Butler, 289 F.R.D. at 93 (quoting Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).

Exhaustion of administrative remedies is excused, however, where "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate

relief can be obtained by pursuing administrative remedies." Murphy v. Arlington Cent. Sch. Dist., 297 F.3d 195, 199(2d Cir. 2002).

Parents need not exhaust administrative remedies to enforce 20 U.S.C. 1415(j).

The bulk of the District's opposition to the parents' OSC for an order of pendency centers around exhausting administrative remedies, which it argues parents have failed to do here. The District argues that any claims related to the education of disabled children, including pendency claims, require exhaustion. Nevertheless, the Second Circuit has explicitly held, "[t]he [District] is wrong: 'an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to' the IDEA's exhaustion requirement." Doe, 790 F.3d at 455 (quoting Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ. 297 F.3d 195 at 199); see also M.G., 982 F. Supp. 2d at 247 ("A party seeking a judicial remedy for a violation of the stay-put provision need not exhaust its administrative remedies.").

> "[P]arents seeking to invoke the stay-put provision of the IDEA need not exhaust their administrative remedies. "Were exhaustion required, it would defeat the purpose behind the stay-put provision, which determines the child's interim placement during the pendency of administrative proceedings."

Cosgrove v. Bd. of Educ., 175 F. Supp. 2d 375; 2001 U.S. Dist. LEXIS 9294.

> "The administrative process is "inadequate" to remedy violations of § 1415(j) because, given the time-sensitive nature of the IDEA's stay-put provision, "an immediate appeal is necessary to give realistic protection to the claimed right." Miss America Org. v. Mattel, Inc., 945 F.2d 536, 545 (2d Cir. 1991). Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review. Tenn. Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir. 1996). If the child is ejected from his or her current educational placement while the administrative process sorts out where the proper interim placement should be, then the deprivation is complete. A belated administrative decision upholding a student's stay-put rights provides no remedy for the disruption already suffered by the student. Hence, as a practical matter, access to immediate interim relief is essential for the vindication of this particular IDEA right. *See* Cole v. Metropolitan Gov't, 954 F. Supp. 1214, 1221 (noting that the stay-put provision "would be of little benefit if the plaintiffs are forced to proceed with administrative remedies in order to apply it"); Carl B. v. Mundelein High Sch. Dist. 120 Bd. of Ed., 93 CV 5304, 1993 WL 787899, at *2 (N.D. Ill. 1993) ("If the stay-put provision applies in this case, it is being violated each day [the student] is not in the program . . . . There is no

5

administrative remedy for this violation . . . . This would mean that [the student] would be deprived of the benefits of the stay-put provision entirely."); *see also* Digre v. Roseville Schs. Ind. Dist. No. 623, 841 F.2d 245 (8th Cir. 1988) (holding that federal courts have the authority to enter injunctions regarding the placement of a child during the pendency of state administrative proceedings)."

Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195 at 199 (2d. Cir. 2002) Sotomayer, J.

Generally, Federal Rule of Civil Procedure 65(c) requires "the movant [to] give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" prior to granting a preliminary injunction. Fed. R. Civ. P. 65(c). Nevertheless, a district court "may dispense with the posting of security entirely where the parties sought to be enjoined or restrained 'have not shown that they will likely suffer harm absent the posting of a bond.'" Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist., 175 F. Supp. 2d 375, 399 (N.D.N.Y. 2001) (quoting Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996).

As can be seen from the foregoing, I have no adequate remedy at law and am entitled to a pendency order described above.

WHEREFORE, I respectfully request that the Court issue the pendency order described above, as well as such other and further relief as may be just and proper.

_____
Jerry Geza Toth

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 26, 2018   _____
Jerry Geza Toth